UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HARDY,

        Plaintiff,

Case No. 1:16-cv-1130

Hon. Gordon J. Quist

v.

ERNST CHRISTIAN GAUDERER,
*et al.*,

        Defendants.
                                 /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' psychologists Michelle Bratel and Heather Woodin's motion for summary judgment for lack of exhaustion (docket no. 13). Although defendants' counsel has included Ms. Woodin as one of the movants, there is no relief sought with respect to plaintiff's claims against Woodin. Therefore, the Court will address only whether plaintiff has exhausted his claims against Ms. Bratel.

**I.**     **Background**

Plaintiff alleged that he was diagnosed with severe depression on September 14, 2009 and taken off of the medication Wellbutrin in November 2012. Compl. (ECF No. 1, PageID.7). While at the Lakeland Correctional Facility (LCF), plaintiff was approved to take Wellbutrin on a six-month trial basis in October 2015. *Id*. He was transferred from LCF to Carson City Correctional Facility (DRF). *Id*. During plaintiff's initial ("in-take") appointment at DRF on March 1, 2016, Ms.

Bratel told plaintiff that his Wellbutrin prescription was discontinued, that "the state is broke," and "You ain't at LCF anymore. Wellbutrin is non-formulary and you shouldn't have been on it in the first place." *Id*. at PageID.8. Before leaving Ms. Bratel's office "she gave Plaintiff a copy of his in-take documents which was fabricated and manipulated with untrue statements, that: a) Plaintiff was seen at 10:44 am; b) Plaintiff was on Paxil; c) Plaintiff's treatment needs and goals were discussed; and d) Plaintiff worked in the barbershop." *Id*. Plaintiff further alleged that "Plaintiff's in-take records show that Bratel manipulated and duplicated information and statements from Plaintiff's previous psychologist Mr. Wright at LCF." *Id*. at PageID.9.

A main thrust of plaintiff's complaint is that defendants engaged in wrongful conduct by creating "fabricated" medical records. In the "introduction" to the complaint, plaintiff alleged that "his Med Management - Complex" was "fabricated to deny him treatment in violation of the Eighth Amendment" and "fabricated out of retaliation in violation of his First Amendment rights." *Id*. at PageID.5. Plaintiff has alleged two causes of action against defendant Bratel. In his Fourth cause of action, plaintiff alleged that Ms. Bratel violated his Eighth Amendment rights because Bratel knew that he would suffer withdrawals when his Wellbutrin was stopped "cold turkey" and that Bratel "fabricated his in-take documents to deny treatment." *Id*. at PageID.13. In his Sixth cause of action, plaintiff alleged that Ms. Bratel and the other two defendants violated his Eighth Amendment rights because they "knew that he was suffering from Wellbutrin withdrawals and did not provide him with some treatment to those symptoms." *Id*. at PageID.14.

## II. Defendant's motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved,

4

then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

In her motion, Bartel identified plaintiff's grievances which could be related to the allegations in plaintiff's complaint: DRF-16-03-0527-12f ("527"); DRF-16-03-0577-28a ("577"); DRF-16-05-1173-12b ("1173"); DRF-16-05-1105-28a ("1105"); DRF-16-05-1192-28a ("1192"); and, DRF-16-05-1208-28a ("1208").

Grievance no. 527 (March 1, 2016) was directed against defendant Michelle Bratel, MA, LPC, TLLP stating as follows:

> On the above date, I had a Doctor's visit via tele-med in the presence of Ms. Bratel to discuss my treatment plan. During that visit I requested that my 5 mg "two times a day" bursbar be discontinued. Ms. Bratel related that to the doctor and he said no problem. I next requested a dose reduction in my Welbutrin and Ms. Bratel said, "You get Welbutrin." She went on to say that Welbutrin was not on the medication formula - that she don't know what he's gonna do about that, but that she

5

> will reschedule me to see him again. Ms. Bratel also stated that my case manager (who I have yet to see) was sick, but that she rescheduled me to see her (Stone) for the next day. The next day I seen Ms. Bratel again because (Stone) was not in yet and Bratel discovered that all my med's had been discontinued, but stated that it was probably a mistake.

No. 527 (ECF No. 14-3, PageID.150).

Grievance no. 577 (March 11, 2016) states that plaintiff spoke with Dr. Gauderer in a tele-med visit in the presence of Ms. Bratel on March 1, 2016, and that when he met Ms. Bratel on March 2, 2016, he "soon discovered" that his Wellbutrin prescription had been discontinued. No. 577 (ECF No. 14-3, PageID.145).

Grievance no. 1105 (May 8, 2016) involved plaintiff's interaction with non-party Warden Campbell. No. 1105 (ECF No. 14-3, PageID.139).

Grievance no. 1173 (May 14, 2016) states that plaintiff has been suffering from paranoia and memory loss during the 23 days that Dr. Gauderer, Ms Bratel and Ms. Woodin stopped his Wellbutrin. No. 1173 (ECF No. 14-3, PageID.123).

Grievance no. 1192 (May 20, 2016) states that Dr. Gauderer falsified his mental health records to save Corizon money. No. 1192 (ECF No. 14-3, PageID.128).

Grievance no. 1208 (May 20, 2016) is directed against a number of individuals. The only claim against Ms. Bartel is that on March 1, 2016, Ms. Bratel told plaintiff that his medication (Wellbutrin) was stopped. No. 1208 (ECF No. 14-3, PageID.133-134).

None of these grievances addressed plaintiff's claim that Ms. Bartel "fabricated his in-take documents to deny treatment." Plaintiff has filed multiple responses to this motion (ECF Nos. 17, 19 and 34). In his most recent response, plaintiff attempts to re-write his complaint, stating, e.g., that he "mistakenly used the word fabricate in the complaint." Plaintiff's Amend. Response

6

(ECF No. 34-2, PageID.225-226). Plaintiff's repeated use of the term "fabricate" in his complaint can hardly be construed as a mistake. In his complaint, plaintiff used the term "fabricated" or "fabricating" on 14 different occasions to describe defendants' actions of placing false statements in his medical records. *See* Compl. at PageID.5, 8-9, 11-15. Among these references are plaintiff's request for $15,000.00 in compensatory damages from Ms. Bratel for wrongful acts including "fabricating his in-take records" and $10,000.00 in punitive damages from Ms. Bratel "for her involvement into Gauderer's conduct and for fabricating Plaintiff's in-take records which caused Plaintiff to suffer serious harm." *Id*. at PageID.14-15. Contrary to plaintiff's new position, his Fourth cause of action makes the serious claim that Ms. Bratel fabricated documents for the purpose of denying him medical treatment. Plaintiff has failed to properly exhaust this claim. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Ms. Bratel is entitled to summary judgment on plaintiff's Fourth cause of action.

### III. Recommendation

For these reasons, I respectfully recommend that defendant Bratel's motion for summary judgment (docket no. 13) be **GRANTED** and that plaintiff's Fourth cause of action be **DISMISSED**.

Dated: August 14, 2017 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).