UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HARDY,

                    Plaintiff,

v.

ERNST CHRISTIAN GAUDERER, *et al.*,

                    Defendants.

_____/

Case No. 1:16-cv-1130

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendant Ernst Gauderer, M.D.'s motion for summary judgment (ECF No. 66).

### I.        Background

Plaintiff's complaint set forth the following allegations against Dr. Gauderer. Plaintiff was transferred to the Carson City Correctional Facility (DRF). According to his "Med Management – Complex", Dr. Gauderer stopped plaintiff's Wellbutrin prescription "without reason" at 9:50 a.m. on March 1, 2016 following plaintiff's in-take visit.  *Id.* at PageID.9.  On March 9, 2016, plaintiff sent a kite to Dr. Gauderer and others of feeling hopeless and suffering from Wellbutrin withdrawal.  *Id.*  Plaintiff met with the doctor via tele-conference on March 11, 2016, complaining about Wellbutrin withdrawals. *Id.*  The doctor's "demeanor was hostile," he told plaintiff that "[w]e don't have Wellbutrin because it's non-formulary," and told him to "[t]alk

1

to the Warden." *Id*. at PageID.10.   The doctor told plaintiff he could have Effexor, Zoloft, Celexa, or Paxil, but not Wellbutrin.  *Id*.   Plaintiff told the Dr. Gauderer that "past doctors" took him off of the alternative drugs due to side effects.  *Id*.   When plaintiff asked the doctor to prescribe something for Wellbutrin withdrawals, the doctor said "it's too late".  *Id*.   Plaintiff was upset, told the doctor he would pursue his grievance until he got the Wellbutrin back, an argument ensued, and plaintiff was ordered to leave.  *Id*.   On March 15, 2016, plaintiff spoke to the Warden about the discontinuation of the medication, saying the Gauderer "suggested he speak to the Warden."  *Id*.   The Warden said he had nothing to do with medication but would look into the issue with Psych Service.  *Id*.   On March 24, 2016, plaintiff found out that his prescription for Wellbutrin had been reinstated after 23 days.  *Id*. at PageID.11.

In his first cause of action, plaintiff alleged that Dr. Gauderer was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when the doctor abruptly discontinued his prescription for Wellbutrin, did not wean him off of the drug, and did not adequately respond to plaintiff's complaints.  *Id*. at PageID.13.   Plaintiff repeats this claim in his second cause of action, with the added allegation that the doctor "fabricated his med records because he needed a valid reason why he stopped Plaintiff's 6-month Trial for Wellbutrin 'cold turkey'."  *Id*.   In his third cause of action, plaintiff alleged that "when he filed a grievance against Gauderer for discontinuing his Wellbutrin, Gauderer retaliated and fabricated his med report ten days after he stopped Plaintiff's Wellbutrin which was relied on and used by [co-defendant] Woodin to deny Plaintiff's treatment complaints, in violation of his First Amendment rights."  *Id*. In his sixth cause of action, plaintiff alleged that Dr. Gauderer and co-defendants Bratel and Woodin inflicted cruel and unusual punishment in violation of the Eighth Amendment by being

2

deliberately indifferent to plaintiff's Wellbutrin withdrawal.  *Id.* at PageID.14.  Plaintiff seeks

compensatory and punitive damages.  *Id.*

## II.    Dr. Gauderer's motion for summary judgment

## A.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is

genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).    However, the Court

3

is not bound to blindly adopt a non-moving party's version of the facts.   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.    Eighth Amendment violations

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.   *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's first, second and sixth causes of action are all brought under the Eighth Amendment and are variations on his claim that Dr. Gauderer stopped prescribing Wellbutrin for no reason, that the doctor took no action while plaintiff went through withdrawal, and that the doctor covered up his wrongdoing by falsifying medical records.   It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.   *Estelle v. Gamble*, 429 U.S. 97 (l976).   A viable Eighth Amendment claim consists of an objective and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if

the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Dr. Gauderer had three contacts with plaintiff.  He evaluated plaintiff with a multi-disciplinary treatment team on March 1, 2016.  Plaintiff's clinical assessment included a dysthymic disorder and a personality disorder.  *See* Medical Records (ECF No. 67-1, PageID.529).  At that time, plaintiff wanted to stop his Buspar, which the doctor did.  *See id.* ("Inmate wants the Buspar stopped. Done.").  Plaintiff did not request Wellbutrin at that time. *Id*. The record reflects that Wellbutrin (Bupropion Hcl) was stopped on that date.  *Id*.  Dr. Gauderer visited with plaintiff on March 11, 2016.  At that time plaintiff stated that he wanted Wellbutrin.  *Id.* at PageID.531.  The doctor noted that plaintiff was not compliant with the

5

medication as prescribed and that, "Inmate asked to have his Paxil discontinued.   He was also on

Wellbutrin approved till 04/10/16."   *Id.* at PageID.531-532.   The doctor further noted:

> I saw no reason to have him continue on Wellbutrin since he was clinically well
> and felt no need for medication.   Now he wants Wellbutrin back and is most
> argumentative and threatening about it.   I offered him alternatives and options but
> he is not open to any of them.   I placed an [sic] RMO for it since he has it approved
> till 4/10/16 but as mentioned I don't think he really needs it beside we have
> alternatives anyway.   I will discuss this inmate with his therapist and Chief of
> Service after I receive and [sic] answer from RMO.

*Id.* at PagedID.532.   The doctor saw plaintiff on March 22, 2016 and reported that Wellbutrin was

approved and renewed through June 23, 2016.   *Id.* at PageID.535.

In his affidavit, the doctor stated in pertinent part:

> 4.      After my review of Jermaine Hardy's records, evaluating him and
> consultation with the multi-disciplinary treatment team, including the Chief of
> Service, Heather Woodin, I made the medical decision to propose a switch of Mr.
> Hardy's medication Wellbutrin, which has "street value" making the person who is
> on it vulnerable in the prison setting to be pressured to cheek it and hand it over to
> other inmates, and offered him safer and more appropriate alternative medications
> for the treatment of his condition, including Effexor, Zoloft, Celexa or Paxil. The
> diversion and misuse of the Wellbutrin is the reason the State of Michigan MDOC
> does not have it on its formulary due to this major safety concern.
>
> 5.      In my medical opinion, the use of the medications suggested would also be
> more effective, more diagnosis-specific in treating his mild symptomatology and
> above all, safer considering the setting it is being dispensed. As mentioned,
> Wellbutrin is a medication that is diverted in Detention Centers to be misused,
> putting the inmate at high risk if he does not surrender it. However, Mr. Hardy
> refused the medications offered.
>
> 6. When Mr. Hardy complained of side effects of withdrawal from the Wellbutrin,
> I evaluated him and no side effects were identified. He complained he was "going
> cold turkey and very irritable and upset and concerned about my blood pressure".
> It was explained that Wellbutrin is not a habit forming medication; therefore "cold
> turkey" would not apply. His other subjective symptoms were assessed, and he was
> perceived as well and stable. His blood pressure concerns were addressed by
> nursing. Alternative medications were again offered and due to his refusal to use
> customary medications, a special request for the use of Wellbutrin was placed to

6

obtain special permission from the MDOC Medication Approval Committee to reinstate the use of Wellbutrin in place of safer and more appropriate medications.

Gauderer Aff. (ECF No. 67-4, PageID.539).

Plaintiff filed a 45-paragraph "declaration" in opposition to Dr. Gauderer's affidavit which was purportedly executed pursuant to 28 U.S.C. § 1746.[1]   *See* Hardy Declaration (ECF No. 72-1, PageID.568-576).   However, plaintiff's declaration was not in the form required by § 1746, i.e., "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".   28 U.S.C. § 1746(2).   Rather, plaintiff added qualifiers which diluted the statutory language, stating "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct *to the best of my understanding, information, knowledge and belief*." (Emphasis added). Hardy Decl. at PageID.576.   Because plaintiff did not follow the statutory requirement to make an unqualified statement that the "foregoing is true and correct," this document is not a declaration which can be used as a substitute for an affidavit under § 1746(2).   Nor can it be used to rebut the facts set forth in Dr. Gauderer's affidavit.   *See* Fed. Rules Civ. Proc. 56(c)(4) (a declaration used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").   *See Totman v. Louisville Jefferson County Metro Government*, 391 Fed. Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit

---

[1] 28 U.S.C. § 1746 provides that in any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated. . ."

7

"must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard set forth in Fed. Rules Civ. Proc. 56(e)(1) (predecessor to Fed. Rules Civ. Proc. 56(c)(4)).  *See also, Ondo v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015) (an affiant's statement based upon his "belief" does not demonstrate the personal knowledge required by Rule 56).

The gist of plaintiff's response is that other health care providers prescribed Wellbutrin, that he did well on the drug, that Dr. Gauderer abruptly discontinued the prescription, that plaintiff suffered severe withdrawal symptoms, that plaintiff "would not accept Effexor, Zoloft, Celexa or Paxil which was harmful to my health and safety" (ECF No.72-1, PageID.573), and that "Dr. Gauderer was not using his professional judgment when he inexplicably discontinued my prescribed Wellbutrin" (ECF No. 72-1, PageID.575). Plaintiff presented selected medical records with his response.  On October 7, 2015, Melanie Clark. M.D., at plaintiff's request, submitted a request that plaintiff receive non-formulary buproprion (Wellbutrin).  Plaintiff's Medical Records (ECF No. 72-1, PageID.613-614).  At that time, plaintiff asked for it to be crushed in order to minimize misuse.  *Id*. at PageID.613.  Plaintiff was approved for a 6-month trial (through April 10, 2016).  *Id*. at PageID.616.  On November 20, 2015, Dr. Clark noted that plaintiff was "complying well with crushed medication and doing much better since bupropion started."  *Id*. at PageID.618-619.

As discussed, when plaintiff arrived at DRF on or about March 1, 2016, Dr. Gauderer felt that, in his medical judgment, plaintiff no longer needed the Wellbutrin and canceled the prescription.   With respect to plaintiff's claim that he suffered Wellbutrin withdrawal symptoms after being taken off of the drug "cold turkey," plaintiff has presented no evidence to rebut Dr. Gauderer's statement that "Wellbutrin is not a habit forming medication; therefore 'cold turkey' would not apply."

Plaintiff's Eighth Amendment claims boil down to a difference of opinion between a prisoner and the prison's board certified psychiatrist regarding the appropriate medication for treating the prisoner's mental condition.   There is no question that Dr. Gauderer provided treatment to plaintiff during the March 2016. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted).   At most, plaintiff has alleged a malpractice claim, i.e., that Dr. Gauderer was negligent in discontinuing a prescription for Wellbutrin.

Furthermore, while plaintiff disagreed with Dr. Gauderer's medical judgment to discontinue the Wellbutrin, this disagreement does not rise to the level of a federal constitutional claim.   "[D]ifferences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim." *Smith v. Sator*, 102 Fed. Appx. 907, 909 (6th Cir. 2004).  *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir.

9

2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment").

In this regard, a difference in medical opinion between Dr. Gauderer and Dr. Clark regarding the use of Wellbutrin is not actionable under § 1983. *Lane v. Wexford Health Sources (Contreator)*, 510 Fed. Appx. 385, 388 (6th Cir. 2013), citing *Estelle*, 429 U.S. at 107.   As the court observed in *Douglas v. Stanwick*, 93 F.Supp.2d 320 (W.D. N.Y. 2000):

> Not every physician will treat every ailment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs.

*Douglas*, 93 F.Supp.2d at 325 (listing cases).[2]

As part of his Eighth Amendment claim (second cause of action), plaintiff contends that Dr. Gauderer "fabricated" medical records because the doctor needed a valid reason for stopping plaintiff's six month trial of Wellbutrin "cold turkey." Specifically, that "(1) I was not compliant with medication as prescribed; (2) I asked to have Paxil discontinued; and (3) I felt no need to be on medication."   Hardy Decl. at PageID.573.   Dr. Gauderer allegedly fabricated these statements on March 11, 2016, after plaintiff threatened to pursue a grievance "until I get my

---

[2] In support of his claim, plaintiff cites the unpublished order entered in *Braddock v. Crompton*, No. 12-1354 (6th Cir. March 15, 2013), in which the Sixth Circuit found that summary judgment was not appropriate when factual questions arose with respect to a doctor's discontinuance of a pain medication.   The unpublished order in *Braddock* was specific to the facts in that case.   The undersigned does not read *Braddock* so broadly as to create an Eighth Amendment claim each time a prison doctor discontinues a prisoner's medication.

Wellbutrin back." *Id*.  Plaintiff contends that the doctor's statement contradicts treatment team member psychologist Bratel, who stated that plaintiff was 100% compliant. *Id*.  Plaintiff is incorrect.  In the March 1, 2016 initial treatment plan cited by plaintiff, Ms. Bratel did not state that plaintiff was 100% compliant; on the contrary, she stated that Objective 3 for plaintiff to reach by the target date March 1, 2017 was to be "100% compliant with meds and psychiatric services." Medical Records (ECF No. 72-1, PageID.622).

In summary, plaintiff's Eighth Amendment claims against Dr. Gauderer arose during the first few weeks after plaintiff transferred to DRF, when the doctor discontinued and then reinstated a medication used to treat plaintiff's depression.  Plaintiff's disagreement with the doctor's medical judgment and course of treatment does not form the basis for a federal constitutional violation.  Accordingly, Dr. Gauderer should be granted summary judgment on plaintiff's Eighth Amendment claims as alleged in his first, second, and sixth causes of action.

### C.    First Amendment violation

In his third cause of action, plaintiff alleged that "when he filed a grievance against Gauderer for discontinuing his Wellbutrin, Gauderer retaliated and fabricated his med report ten days after he stopped Plaintiff's Wellbutrin which was relied on and used by [co-defendant] Woodin to deny Plaintiff treatment complaints, in violation of his First Amendment rights." Compl. at PageID.13.  To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the

adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Dr. Gauderer acknowledges that plaintiff met the first element by filing grievances. The doctor contests the second and third elements, stating that plaintiff's claim that the doctor altered the medical records was frivolous and that an alteration of the records would be considered an adverse action only if it had a causal relation to the care and treatment of the patient.   Defendant cites no case law to support his cursory arguments.   Nevertheless, the Court concludes that plaintiff has failed to show an adverse action, because he has not demonstrated that the doctor "altered" or "fabricated" medical records. Accordingly, Dr. Gauderer should be granted summary judgment on plaintiff's First Amendment claim alleged in his third cause of action.

## III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Gauderer's motion for summary judgment (ECF No. 66) be **GRANTED** and that he be **DISMISSED** from this action.

Dated:  March 5, 2018                               /s/ Ray Kent
                                                   United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).